IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
YOUNGTOWN DIVISION

| | |
|---|---|
| Teresa Hawn; Nichole Hawn; and Dewitt Slade | Case No. |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| Bajco 100, LLC; Bajco Arizona, LLC; Bajco Central, LLC; Bajco Florida, LLC; Bajco Global Management, LLC ; Bajco Global Management II, LLC; Bajco Gulf, LLC; Bajco Illinois, LLC; Bajco International Holdings, Inc.; Bajco International Investments, LLC; Bajco International, LLC; Bajco Michiana, LLC; Bajco Michiana II , LLC; Bajco Michiana III, LLC; Bajco Michiana IV, LLC; Bajco Michiana V, LLC; Bajco New York, LLC; Bajco North, LLC Bajco Ohio, LLC; Bajco Ontario, Inc.; Bajco Real Venture II, LLC; Bajco Real Venture III, LLC; Bajco Restaurant Holdings, LLC; Bajco Venture Funding II, LLC; Bajco Venture Funding, LLC; Bajco Williamsport, LLC; Bajco Wisconsin, LLC; Bajco, LLC; Nadeem Bajwa; and Faisal Bajwa; John Doe 1-10; and Doe Corporation 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Teresa Hawn, Nichole Hawn, and Dewitt Slade, on behalf of themselves and

similarly-situated individuals, brings this action against Defendants Bajco 100, LLC; Bajco Arizona, LLC; Bajco Central, LLC; Bajco Florida, LLC; Bajco Global Management, LLC ; Bajco Global Management II, LLC; Bajco Gulf, LLC; Bajco Illinois, LLC; Bajco International Holdings, Inc.; Bajco International Investments, LLC; Bajco International, LLC; Bajco Michiana, LLC; Bajco Michiana II , LLC; Bajco Michiana III, LLC; Bajco Michiana IV, LLC; Bajco Michiana V, LLC; Bajco New York, LLC; Bajco North, LLC Bajco Ohio, LLC; Bajco Ontario, Inc.; Bajco Real Venture II, LLC; Bajco Real Venture III, LLC; Bajco Restaurant Holdings, LLC; Bajco Venture Funding II, LLC; Bajco Venture Funding, LLC; Bajco Williamsport, LLC; Bajco Wisconsin, LLC; Bajco, LLC; Nadeem Bajwa; and Faisal Bajwa ("Defendants"). Plaintiffs seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"), the Florida Constitution, Art. X, § 24 , and unjust enrichment.

2.      Defendants own and operate approximately 125 Papa John's Pizza locations in the United States ("Defendants' Papa John's stores").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the IMWL, the IWPCA, and the Florida Constitution, Art. X, § 24, by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, the IMWL, the IWPCA, and the Florida Constitution, Art. X, § 24.

5.      All delivery drivers at the Defendants' Papa John's stores, including Plaintiffs, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.      Plaintiffs also bring this action on behalf of themselves and similarly situated current and former delivery drivers in Illinois and Florida, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the IMWL, the IWPCA, and the Florida Constitution, Art. X, § 24, and for unjust enrichment.

### Jurisdiction and Venue

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Illinois and Florida law claims.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant Bajco, LLC; Bajco Illinois, LLC; and Bajco Florida, LLC all have their principal place of business in this District and all Defendants are residents of the state of Ohio, the state where this District is located.

**Parties**

**Plaintiffs**

**Teresa Hawn**

11.     Plaintiff Teresa Hawn is a resident of Illinois.

12.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the IMWL and the IWPCA.

13.     Plaintiff has given written consent to join this action.

**Nichole Hawn**

14.     Plaintiff Nichole Hawn is a resident of Illinois.

15.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the IMWL and the IWPCA.

16.     Plaintiff has given written consent to join this action.

**Dewitt Slade**

17.     Plaintiff Dewitt Slade is a resident of Florida.

18.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and the Florida Constitution, Art. X, § 24.

19.     Plaintiff has given written consent to join this action.

**Defendants**

20.     Defendants' Papa John's stores are owned and/or operated by a number of entities and individuals, each of whom employ Plaintiffs and the Delivery Drivers.

**The Defendant Entities**

21.     The Entity Defendants—Bajco 100, LLC; Bajco Arizona, LLC; Bajco Central, LLC; Bajco Florida, LLC; Bajco Global Management, LLC ; Bajco Global Management II, LLC; Bajco Gulf, LLC; Bajco Illinois, LLC; Bajco International Holdings, Inc.; Bajco International Investments, LLC; Bajco International, LLC; Bajco Michiana, LLC; Bajco Michiana II , LLC; Bajco Michiana III, LLC; Bajco Michiana IV, LLC; Bajco Michiana V, LLC; Bajco New York, LLC; Bajco North, LLC Bajco Ohio, LLC; Bajco Ontario, Inc.; Bajco Real Venture II, LLC; Bajco Real Venture III, LLC; Bajco Restaurant Holdings, LLC; Bajco Venture Funding II, LLC; Bajco Venture Funding, LLC; Bajco Williamsport, LLC; Bajco Wisconsin, LLC; and Bajco, LLC—are limited liability companies and a corporation headquartered in and/or around Niles, OH, and/or Canfield, OH.

22.     The Defendant Entities were founded, owned, and/or operated by Defendant Nadeem Bajwa.

23.     Nadeem Bajwa has entered into franchise agreements with Papa John's to operate Defendants' Papa John's stores whereby he agrees to ensure that any Papa John's stores operated pursuant to the franchise agreement will comply with all laws, including wage and hour laws.

24.     Upon information and belief, the word contained in all of the Defendant Entities' names—"Bajco"—is a reference to Defendant Nadeem Bajwa's last name.

25.     Upon information and belief, some of the Defendant Entities primarily function to operate a single Papa John's store or group of stores within the Bajco Papa John's Pizza operation. For example, upon information and belief, "Bajco Illinois, LLC" operates the store location where Plaintiffs Nichole and Teresa Hawn worked.

26.     Upon information and belief, other of the Defendant Entities operate in an administrative or support role within the Bajco Papa John's Pizza operation. For example, upon

information and belief, Bajco, LLC; Bajco 100, LLC; Bajco International, LLC; Bajco International Holdings, Inc.; Bajco International Investments, LLC; Bajco Global Management, LLC; Bajco Global Management II, LLC; Bajco Restaurant Holdings, LLC; Bajco Venture Funding, LLC; Bajco Venture Funding II, LLC; Bajco Real Venture II, LLC; and Bajco Real Venture III, LLC, are entities that provide administrative, back office, financial, and other operational support to Defendants' Papa John's stores.

27.     Together, all of the Defendants make up the Bajco Papa John's Pizza operation.

28.     Defendants collectively operate under the trade name "Bajco Group".

29.     Defendants own and operate one of the largest Papa John's Pizza franchise chains, totaling approximately 125 stores in the United States.

30.     The Bajco Papa John's operation was recognized in 2019 by "Franchise 200" as the #121 ranked franchise in the United States. *See* https://www.franchisetimes.com/pdf/2019/Franchise%20Handbook-web.pdf.

31.     In 2015, Defendants Bajco, LLC, Bajco 100, LLC, Bajco East, LLC, Bajco Florida, LLC, Bajco Global Management, LLC, Bajco Gulf Holdings, LLC, Bajco Gulf, LLC, Bajco Michiana, LLC, Bajco Michiana II, LLC, Bajco Michiana III, LLC, Bajco New York, LLC, Bajco North, LLC, Bajco PA, LLC, Bajco Philadelphia, LLC, BETCO 36 Bajco Venture, LLC, and Bajco Williamsport, LLC jointly settled a delivery driver automobile expenses under-reimbursement case based on the same facts alleged herein. *See Heuberger v. Bajco, LLC*, No. 1:14-cv-01472, Doc. 101 (S.D. Ind. Oct. 21, 2015).

32.     The Bajco Papa John's operation has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the

rate and methods of pay, and/or maintain employee records. Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Papa John's franchise stores and maintain interrelated operations, centralized control of labor relations, common management and common ownership and financial control. Because the work performed by Plaintiffs and all other Delivery Drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiffs and other similarly situated employees under the FLSA's definition of "employer."

33.     Each of the Defendant Entities has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Each of the Defendant Entities directly or indirectly controls of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

35.     Each of the Defendant Entities maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

36.     Each of the Defendant Entities is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

37.     Each of the Defendant Entities has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

38.     Each of the Defendant Entities has gross revenue that exceeds $500,000 per year.

39.     Collectively, the Defendant Entities have gross revenue that exceeds $500,000 per

year.

40.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Papa John's Pizza franchise stores and maintain interrelated operations, centralized control of labor relations, common management, common ownership, and financial control. Because the work performed by Plaintiff, and all other delivery drivers, benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiffs and other similarly situated employees under the FLSA's definition of "employer."

**Nadeem Bajwa**

41.     Defendant Nadeem Bajwa is the owner of the Defendant Entities.

42.     Defendant Nadeem Bajwa is involved in the operation of the Defendant Entities.

43.     Defendant Nadeem Bajwa is the CEO of some or all of the Defendant Entities.

44.     Defendant Nadeem Bajwa is the CFO of some or all of the Defendant Entities.

45.     Through the Defendant Entities, Defendant Nadeem Bajwa owns and operates the Defendants' Papa John's stores.

46.     Defendant Nadeem Bajwa acts directly and indirectly on behalf of the Bajco Papa John's operation in relation to the operation's Delivery Drivers.

47.     Defendant Nadeem Bajwa has the authority to control the terms of employment of the Delivery Drivers at Defendants' Papa John's stores, even if he sometimes delegates that authority to other individuals and managers.

48.     Nadeem Bajwa operates more than 125 Papa John's Stores in the United States.

49.     Nadeem Bajwa is individually liable to the Delivery Drivers at the Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA, the IMWL, IWPCA, and Florida Constitution, Art. X, § 24, because he owns and operates Bajco Illinois, LLC, Bajco Florida, LLC, Bajco Global Management, LLC., Bajco International, Inc., ultimately controls significant aspects of the Defendants' Papa John's stores day-to-day functions, and ultimately controls compensation and reimbursement of employees.

50.     Nadeem Bajwa is the franchisee of the Defendants' Papa John's stores.

51.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had financial control over the operations at each of the Defendants' Papa John's stores.

52.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had a role in significant aspects of the Defendants' Papa John's stores' day to day operations.

53.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had control over the Defendants' Papa John's stores' pay policies.

54.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had power over personnel and payroll decisions at the Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

55.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to hire, fire and discipline employees, including Delivery Drivers at the Defendants' Papa John's stores.

56.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to stop any illegal pay practices that harmed Delivery Drivers at the Defendants' Papa John's stores.

57.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to transfer the assets and liabilities of the Defendant entities.

58.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to declare bankruptcy on behalf of the Defendant entities.

59.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to enter into contracts on behalf of each of the Defendants' Papa John's stores.

60.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa has had the power to close, shut down, and/or sell each of the Defendants' Papa John's stores.

61.     At all relevant times, by virtue of his role as owner and CEO of the Defendant Entities, Nadeem Bajwa had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

62.     The Defendants' Papa John's stores and operation function for Nadeem Bajwa's profit.

63.     Nadeem Bajwa has influence over how the Defendants' Papa John's stores can run more profitably and efficiently.

**Faisal Bajwa**

64.     Faisal Bajwa is the CFO of some or all of the Defendant Entities.

10

65.     Faisal Bajwa operates more than 125 Papa John's Stores in the United States.

66.     Faisal Bajwa is individually liable to the Delivery Drivers at the Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA, the IMWL, the IWPCA, and Florida Constitution, Art. X, § 24, because he owns and operates Bajco Illinois, LLC, Bajco Florida, LLC, Bajco Global Management, LLC., Bajco International, Inc., ultimately controls significant aspects of the Defendants' Papa John's stores day-to-day functions, and ultimately controls compensation and reimbursement of employees.

67.     At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had financial control over the operations at each of the Defendants' Papa John's stores.

68.     At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had a role in significant aspects of the Defendants' Papa John's stores' day to day operations.

69.     At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had control over the Defendants' Papa John's stores' pay policies.

70.     At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had power over personnel and payroll decisions at the Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

71.     At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to hire, fire and discipline employees, including Delivery Drivers at the Defendants' Papa John's stores.

72. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to stop any illegal pay practices that harmed Delivery Drivers at the Defendants' Papa John's stores.

73. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to transfer the assets and liabilities of the Defendant entities.

74. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to declare bankruptcy on behalf of the Defendant entities.

75. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to enter into contracts on behalf of each of the Defendants' Papa John's stores.

76. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa has had the power to close, shut down, and/or sell each of the Defendants' Papa John's stores.

77. At all relevant times, by virtue of his role as CFO of the Defendant Entities, Faisal Bajwa had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

78. The Defendants' Papa John's stores function for Faisal Bajwa's profit.

79. Faisal Bajwa has influence over how the Defendants' Papa John's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

80. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Papa John's stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Papa John's stores as

12

that term is defined by the FLSA, the IMWL, the IWPCA, and Florida Constitution, Art. X, § 24.

81.     Upon information and belief, Nadeem Bajwa owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Papa John's operation.

82.     Upon information and belief, the franchisor, Papa John's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's stores.

83.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

84.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA, the IMWL, the IWPCA, and Florida Constitution, Art. X, § 24.

85.     Upon information and belief, Nadeem Bajwa has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA, the IMWL, the IWPCA, and Florida Constitution, Art. X, § 24.

86.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**<u>Class-wide Factual Allegations</u>**

87.     During all relevant times, Defendants have operated the Defendants' Papa John's stores.

88.     The primary function of the Defendants' Papa John's stores is to sell pizza and other

13

food items to customers, whether they dine in, carry out, or have their food delivered.

89.    Some or all of the Defendants' Papa John's stores employ delivery drivers.

90.    Plaintiffs and the similarly situated persons that Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Defendants' Papa John's stores.

91.    All delivery drivers employed at the Defendants' Papa John's stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

92.    Drivers at the Defendants' Papa John's stores work "dual jobs".

93.    At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while completing deliveries.

94.    At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

95.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

96.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

97.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and

14

data charges all for the primary benefit of Defendants.

98.     Defendants require delivery drivers at Defendants' Papa John's stores to provide cellphones to use while completing deliveries for Defendants.

99.     Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

100.    The Defendants' Papa John's stores do not reimburse the delivery drivers' cellphone expenses.

101.    The Defendants' Papa John's stores do not track or record the delivery drivers' cellphone expenses.

102.    Excluding the Green Street location in Champaign, Illinois, Defendants reimburse delivery drivers' automobile expenses based on a set amount for each delivery they complete.

103.    Defendants reimburse delivery drivers' automobile expenses based on a percentage of each order at their Green Street location in Champaign, Illinois.

104.    Defendants' Papa John's stores do not track or record the delivery drivers' actual automobile expenses.

105.    Defendants' Papa John's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

106.    Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

107.    Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

15

108.    Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

109.    Defendants do not collect receipts of delivery drivers' automobile registration costs.

110.    Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

111.    Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Papa John's stores.

112.    Defendants' Papa John's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

113.    Defendants' Papa John's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

114.    Defendants' Papa John's stores do not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

115.    Defendants' Papa John's stores did not even reasonably approximate the delivery drivers' automobile expenses.

116.    Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

117.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2012: 55.5 cents/mile
    b.    2013: 56.5 cents/mile
    c.    2014: 56 cents/mile
    d.    2015: 57.5 cents/mile
    e.    2016: 54 cents/mile
    f.    2017: 53.5 cents/mile

g.    2018: 54.5 cents/mile
h.    2019: 58 cents/mile
i.     2020: 57.5 cents/mile
j.     2021: 56 cents/mile
k.    2022: 58.5 cents/mile
l.     2022: 62.5 cents/mile

118.    The delivery drivers at the Defendants' Papa John's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

119.    The delivery drivers at Defendants' Papa John's stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

120.    Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

121.    Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

122.    Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

123.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA, Illinois, and/or Florida law.

124.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Papa John's stores.

125.    All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar

distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or at a tipped wage rate before deducting unreimbursed vehicle costs.

126.     Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

127.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

128.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Defendants' Papa John's stores.

129.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

130.     Defendants have willfully failed to pay federal and Illinois state minimum wage to Plaintiffs Nichole Hawn and Teresa Hawn and similarly situated delivery drivers at the Defendants' Papa John's stores.

131.     Defendants have willfully failed to pay federal and Florida state minimum wage to Plaintiff Slade and similarly situated delivery drivers at the Defendants' Papa John's stores.

132. Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

133. All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

134. All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

## Plaintiffs' Individual Factual Allegations

135. Plaintiff Nichole Hawn worked for Defendants as a pizza delivery driver at the Defendants' Papa John's stores from approximately 2012 until May 2020 at their Danville, Illinois location and Green Street location in Champaign, Illinois.

136. Plaintiff Nichole Hawn worked dual jobs—one inside the store, and one outside the store.

137. Plaintiff Nichole Hawn was paid minimum wage minus a tip credit as an hourly rate for all hours worked while clocked in as a delivery driver delivering food.

138. Plaintiff Nichole Hawn made approximately $5.00 per hour while out on deliveries.

139. Plaintiff Nichole Hawn delivered pizza and other food items to Defendants' customers' homes and businesses.

140. When she was not making deliveries, Plaintiff Nichole Hawn worked inside the restaurant as a manager.

141. Plaintiff Nichole Hawn was required to use her own car to deliver pizzas.

19

142.     Plaintiff Nichole Hawn was required to use her own cellphone when delivering pizzas.

143.     Plaintiff Nichole Hawn was paid slightly above minimum wage for the hours she worked inside the restaurant as a manager.

144.     Plaintiff Nichole Hawn made $10.00 per hour while working inside of the store as a manager.

145.     Plaintiff Nichole Hawn was reimbursed per delivery at the Danville, Illinois location while completing deliveries for Defendants.

146.     Plaintiff Nichole Hawn was reimbursed a percentage of each order at the Green Street location in Champaign, Illinois while completing deliveries for Defendants.

147.     Plaintiff Nichole Hawn received $.90 per delivery while she completed deliveries for Defendants at the Danville, Illinois location.

148.     Plaintiff Nichole Hawn received 6% of each order while she completed deliveries for Defendants at the Green Street location in Champaign, Illinois.

149.     Plaintiff Nichole Hawn was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

150.     Plaintiff Nichole Hawn was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

151.     Plaintiff Nichole Hawn was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

152.     Plaintiff Nichole Hawn purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

153.     Defendants did not track the actual expenses incurred by Plaintiff Nichole Hawn.

154.     Defendants did not ask Plaintiff Nichole Hawn to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

155.     Defendants' Papa John's stores did not collect receipts from Plaintiff Nichole Hawn related to the expenses she incurred while completing deliveries.

156.     Defendants did not collect receipts of Plaintiff Nichole Hawn's gasoline purchases during weeks when she worked for Defendants.

157.     Defendants did not collect receipts of Plaintiff Nichole Hawn's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

158.     Defendants did not collect receipts of Plaintiff Nichole Hawn's monthly or annual automobile insurance costs.

159.     Defendants did not collect receipts of Plaintiff Nichole Hawn's automobile registration costs.

160.     Defendants did not collect receipts of Plaintiff Nichole Hawn's automobile financing or purchase costs.

161.     Defendants did not collect any other receipts from Plaintiff Nichole Hawn related to the automobile expenses she incurred as a delivery driver at Defendants' Papa John's stores.

162.     Defendants did not track the cellphone expenses incurred by Plaintiff Nichole Hawn.

163.     Defendants did not ask Plaintiff Nichole Hawn to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

164.     Defendants did not collect receipts of Plaintiff Nichole Hawn's cellphone data plan expenses.

165.     Defendants did not reimburse Plaintiff Nichole Hawn for her cellphone expenses.

166.     Defendants did not reimburse Plaintiff Nichole Hawn based on her actual delivery-related expenses.

167.     Plaintiff Nichole Hawn was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

168.     During Plaintiff Nichole Hawn's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Nichole Hawn for automobile and other job-related expenses.

169.     Plaintiff Nichole Hawn regularly made approximately 5 deliveries per hour during the hours she worked as a delivery driver.

170.     Plaintiff Nichole Hawn regularly drove approximately 4.5 miles round trip per delivery.

171.     In 2019, for example, the IRS business mileage reimbursement had been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff Nichole Hawn completed a delivery order a the Danville location that cost the customer $20, and required her to drive 4.5 miles, the result would be that Plaintiff Nichole Hawn was reimbursed $.90 for the delivery, which amounts to $.20 per mile. Considering Plaintiff Nichole Hawn estimates an average of about

22

4.5 miles per delivery (4.5 miles × \$.58 per mile = \$2.61), Defendants under-reimbursed her by about \$1.71 per delivery (\$2.61 - \$.90), and \$8.55 per hour (\$1.71 × 5 deliveries per hour).

172.     Defendants failed to properly take a tip credit from Plaintiff Nichole Hawn's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Nichole Hawn they would be taking.

173.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Nichole Hawn minimum wage as required by law.

174.     Defendants have been unjustly enriched by Plaintiff Nichole Hawn in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

175.     Defendants have been unjustly enriched by Plaintiff Nichole Hawn in that she used her own cellphone and incurred cellphone-related expenses for Defendants; benefit.

176.     Plaintiff Nichole Hawn originally asserted her claims by filing a claim form in a previously filed FLSA collective action *Valesh v. Bajco* Case No: 4:20-cv-00028 in the USDC Northern District of Indiana on March 23, 2021.

177.     Plaintiff Teresa Hawn worked for Defendants as a pizza delivery driver at the Defendants' Papa John's stores from approximately 2013 until 2019 at their Danville, Illinois location.

178.     Plaintiff Teresa Hawn worked dual jobs—one inside the store, and one outside the store.

179.     Plaintiff Teresa Hawn was paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food.

180.     Plaintiff Teresa Hawn made \$4.95 per hour while out on deliveries.

181.     Plaintiff Teresa Hawn delivered pizza and other food items to Defendants' customers' homes and businesses.

182.     When she was not making deliveries, Plaintiff Teresa Hawn worked inside the restaurant, completing tasks such as taking orders, preparing food, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant.

183.     Plaintiff Teresa Hawn was required to use her own car to deliver pizzas.

184.     Plaintiff Teresa Hawn was required to use her own cellphone when delivering pizzas.

185.     Plaintiff Teresa Hawn was paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours she worked inside the restaurant.

186.     Plaintiff Teresa Hawn made $8.25 per hour while working inside of the store.

187.     Plaintiff Teresa Hawn was reimbursed per delivery while completing deliveries for Defendants.

188.     Plaintiff Teresa Hawn received $.90 per delivery while she completed deliveries for Defendants.

189.     Plaintiff Teresa Hawn was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

190.     Plaintiff Teresa Hawn was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

191.     Plaintiff Teresa Hawn was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

24

192.     Plaintiff Teresa Hawn purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

193.     Defendants did not track the actual expenses incurred by Plaintiff Teresa Hawn.

194.     Defendants did not ask Plaintiff Teresa Hawn to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

195.     Defendants' Papa John's stores did not collect receipts from Plaintiff Teresa Hawn related to the expenses she incurred while completing deliveries.

196.     Defendants did not collect receipts of Plaintiff Teresa Hawn's gasoline purchases during weeks when she worked for Defendants.

197.     Defendants did not collect receipts of Plaintiff Teresa Hawn's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

198.     Defendants did not collect receipts of Plaintiff Teresa Hawn's monthly or annual automobile insurance costs.

199.     Defendants did not collect receipts of Plaintiff Teresa Hawn's automobile registration costs.

200.     Defendants did not collect receipts of Plaintiff Teresa Hawn's automobile financing or purchase costs.

201.     Defendants did not collect any other receipts from Plaintiff Teresa Hawn related to the automobile expenses she incurred as a delivery driver at Defendants' Papa John's stores.

202.     Defendants did not track the cellphone expenses incurred by Plaintiff Teresa Hawn.

203.     Defendants did not ask Plaintiff Teresa Hawn to provide records of cellphone

25

expenses she incurred while delivering pizzas for Defendants.

204.     Defendants did not collect receipts of Plaintiff Teresa Hawn's cellphone data plan expenses.

205.     Defendants did not reimburse Plaintiff Teresa Hawn for his cellphone expenses.

206.     Defendants did not reimburse Plaintiff Teresa Hawn based on his actual delivery-related expenses.

207.     Plaintiff Teresa Hawn was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

208.     During Plaintiff Teresa Hawn's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Teresa Hawn for automobile and other job-related expenses.

209.     Plaintiff Teresa Hawn regularly made approximately 5 deliveries per hour during the hours she worked as a delivery driver.

210.     Plaintiff Teresa Hawn regularly drove approximately 4.5 miles round trip per delivery.

211.     In 2019, for example, the IRS business mileage reimbursement had been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff Teresa Hawn completed a delivery order that cost the customer $20, and required her to drive 4.5 miles, the result would be that Plaintiff Teresa Hawn was reimbursed $.90 for the delivery, which amounts to $.20 per mile. Considering Plaintiff Teresa Hawn estimates an average of about 4.5 miles per delivery (4.5 miles × $.58 per mile = $2.61), Defendants under-reimbursed her by about $1.71 per delivery ($2.61 - $.90), and $8.55 per hour ($1.71 × 5 deliveries per hour)).

212. Defendants failed to properly take a tip credit from Plaintiff Teresa Hawn's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Teresa Hawn they would be taking.

213. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Teresa Hawn minimum wage as required by law.

214. Defendants have been unjustly enriched by Plaintiff Teresa Hawn in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

215. Defendants have been unjustly enriched by Plaintiff Teresa Hawn in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

216. Plaintiff Teresa Hawn originally asserted her claims by filing a claim form in a previously filed FLSA collective action *Valesh v. Bajco* Case No: 4:20-cv-00028 in the USDC Northern District of Indiana on March 23, 2021.

217. Plaintiff Dewitt Slade worked for Defendants as a pizza delivery driver at the Defendants' Papa John's stores from approximately January 2015 until the present at their St. Pablo Road location in Jacksonville, Florida.

218. Plaintiff Dewitt Slade worked dual jobs—one inside the store, and one outside the store.

219. Plaintiff Dewitt Slade was paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food.

220. Plaintiff Dewitt Slade delivered pizza and other food items to Defendants' customers' homes and businesses.

221. When he was not making deliveries, Plaintiff Dewitt Slade worked inside the

restaurant, completing tasks such as taking orders, preparing food, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant.

222.　Plaintiff Dewitt Slade was required to use his own car to deliver pizzas.

223.　Plaintiff Dewitt Slade was required to use his own cellphone when delivering pizzas.

224.　Plaintiff Dewitt Slade was paid minimum wage or slightly above minimum wage for the hours he worked inside the restaurant.

225.　Plaintiff Dewitt Slade made $10.00 per hour while working inside of the store.

226.　Plaintiff Dewitt Slade was reimbursed per delivery while completing deliveries for Defendants.

227.　Plaintiff Dewitt Slade received $1.40 per delivery while he completed deliveries for Defendants.

228.　Plaintiff Dewitt Slade was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

229.　Plaintiff Dewitt Slade was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

230.　Plaintiff Dewitt Slade was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

231.　Plaintiff Dewitt Slade purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

28

232.     Defendants did not track the actual expenses incurred by Plaintiff Dewitt Slade.

233.     Defendants did not ask Plaintiff Dewitt Slade to provide receipts of the expenses he incurred while delivering pizzas and other food items for Defendants.

234.     Defendants' Papa John's stores did not collect receipts from Plaintiff Dewitt Slade related to the expenses he incurred while completing deliveries.

235.     Defendants did not collect receipts of Plaintiff Dewitt Slade's gasoline purchases during weeks when he worked for Defendants.

236.     Defendants did not collect receipts of Plaintiff Dewitt Slade's automobile maintenance, repair, and parts purchased or paid for during weeks when he worked for Defendants.

237.     Defendants did not collect receipts of Plaintiff Dewitt Slade's monthly or annual automobile insurance costs.

238.     Defendants did not collect receipts of Plaintiff Dewitt Slade's automobile registration costs.

239.     Defendants did not collect receipts of Plaintiff Dewitt Slade's automobile financing or purchase costs.

240.     Defendants did not collect any other receipts from Plaintiff Dewitt Slade related to the automobile expenses he incurred as a delivery driver at Defendants' Papa John's stores.

241.     Defendants did not track the cellphone expenses incurred by Plaintiff Dewitt Slade.

242.     Defendants did not ask Plaintiff Dewitt Slade to provide records of cellphone expenses he incurred while delivering pizzas for Defendants.

243.     Defendants did not collect receipts of Plaintiff Dewitt Slade's cellphone data plan expenses.

244.    Defendants did not reimburse Plaintiff Dewitt Slade for his cellphone expenses.

245.    Defendants did not reimburse Plaintiff Dewitt Slade based on his actual delivery-related expenses.

246.    Plaintiff Dewitt Slade was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

247.    During Plaintiff Dewitt Slade's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Dewitt Slade for automobile and other job-related expenses.

248.    Plaintiff Dewitt Slade regularly made approximately 2 deliveries per hour during the hours he worked as a delivery driver.

249.    Plaintiff Dewitt Slade regularly drove approximately 4 miles round trip per delivery.

250.    In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff Dewitt Slade completed a delivery order that cost the customer $20, and required him to drive 4 miles, the result would be that Plaintiff Dewitt Slade was reimbursed $1.40 for the delivery, which amounts to $.35 per mile. Considering Plaintiff Dewitt Slade estimates an average of about 4 miles per delivery (4 miles × $.58 per mile = $2.32), Defendants under-reimbursed him by about $.92 per delivery (2.32 - $1.40), and $1.84 per hour ($.92 × 2 deliveries per hour).

251.    Defendants failed to properly take a tip credit from Plaintiff Dewitt Slade's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Dewitt Slade they would be taking.

252.    As a result of unreimbursed automobile expenses and other job-related expenses,

Defendants have failed to pay Plaintiff Dewitt Slade minimum wage as required by law.

253. Defendants have been unjustly enriched by Plaintiff Dewitt Slade in that he used his own vehicle and incurred vehicle-related expenses for Defendants' benefit.

254. Defendants have been unjustly enriched by Plaintiff Dewitt Slade in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

255. Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Defendants' Papa John's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

256. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

257. Defendants' unlawful conduct is pursuant to a corporate policy or practice.

258. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

259. Defendants' unlawful conduct has been widespread, repeated, and consistent.

260. The First Count is properly brought under and maintained as an opt-in collective

action under 29 U.S.C. § 216(b).

261.     In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## Class Action Allegation

262.     Plaintiffs Nichole Hawn and Teresa Hawn bring the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in the State of Illinois between the date three years prior to the filing of the original complaint and the date of final judgment in this matter for violations of the IMWL, and all current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in the State of Illinois between the date ten years prior to the filing of the original complaint and the date of final judgment in this matter for violations of the IWPCA ("Rule 23 Illinois Wage Subclass").

263.     Plaintiffs Nichole Hawn and Teresa Hawn bring the Sixth Count under Federal Rule of Civil procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in the State of Illinois between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Illinois Unjust Enrichment Subclass").

264.     Together, the Rule 23 Illinois Wage Subclass and Rule 23 Illinois Unjust Enrichment Subclass constitute the "Rule 23 Illinois Class."

265.     Excluded from the Rule 23 Illinois Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and

32

otherwise proper requests for exclusion from the Rule 23 Illinois Class.

266. The number and identity of the Rule 23 Illinois Class members are ascertainable from Defendants' records.

267. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Illinois Class member and the benefits conferred by the Rule 23 Illinois Class members and realized by Defendants are determinable from Defendants' records.

268. For the purpose of notice and other purposes related to this action, the Rule 23 Illinois Class members' names and contact information are readily available from Defendants.

269. Notice can be provided by means permissible under Rule 23 for the Rule 23 Illinois Class members.

270. The Rule 23 Illinois Class members are so numerous that joinder of all members is impracticable.

271. The disposition of the Rule 23 Illinois Class members' claims as a class will benefit the parties and the Court.

272. There are more than 50 Rule 23 Illinois Class members.

273. Plaintiffs Nichole Hawn and Teresa Hawn's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Illinois Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Illinois Class member in separate actions.

274. Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

33

275.     Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

276.     Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

277.     By seeking to represent the interests of the Rule 23 Illinois Class members, Plaintiffs Nichole Hawn and Teresa Hawn are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

278.     Plaintiffs Nichole Hawn and Teresa Hawn are able to fairly and adequately protect the interests of the Rule 23 Illinois Class and has no interests antagonistic to the Rule 23 Illinois Class.

279.     Plaintiffs Nichole Hawn and Teresa Hawn are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

280.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Illinois Class members are small in the sense pertinent to class action analysis, the expenses and

burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Illinois Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Illinois Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Illinois Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

281. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

282. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

283. The Rule 23 Illinois Wage Subclass and the Rule 23 Illinois Unjust Enrichment Subclass are properly treated as subclasses pursuant to Rule 23(c)(5).

284. Common questions of law and fact exist as to the Rule 23 Illinois Class that

predominate over any questions only affecting Plaintiffs Nichole Hawn and Teresa Hawn and the

Rule 23 Illinois Class members individually and include, but are not limited to:

> a. Whether Plaintiff Nichole Hawn and Teresa Hawn and the Rule 23 Class members were subject to a common expense reimbursement policy;

> b. Whether Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

> c. Whether Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

> d. Whether Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

> e. Whether Defendants collected and maintained records of Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members' actual vehicle expenses;

> f. Whether Defendants reimbursed Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members for their actual expenses;

> g. Whether Defendants reimbursed Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

> h. Whether Defendants reimbursed Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members based on a reasonable approximation of the expenses they incurred;

> i. Whether Defendants properly reimbursed Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class members;

> j. Whether Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class conferred a benefit on Defendants that Defendants were aware of;

> k. Whether Defendants accepted the benefits conferred on them by Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class;

l.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiffs Nichole Hawn and Teresa Hawn and the Rule 23 Illinois Class without compensating for it;

m.   The nature and extent of class-wide injury and the measure of damages for those injuries.

285.   In recognition of the services Plaintiffs Nichole Hawn and Teresa Hawn have rendered and will continue to render to the Rule 23 Illinois Class, Plaintiffs Nichole Hawn and Teresa Hawn will each request payment of a service award upon resolution of this action.

286.   Plaintiff Slade brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in the State of Florida between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Florida Wage Subclass").

287.   Plaintiff Slade brings the Seventh Count under Federal Rule of Civil procedure 23, on behalf of himself and a class of persons consisting of:

All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in the State of Florida between the date four years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Florida Unjust Enrichment Subclass").

288.   Together, the Rule 23 Florida Wage Subclass and Rule 23 Florida Unjust Enrichment Subclass constitute the "Rule 23 Florida Class."

289.   Excluded from the Rule 23 Florida Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Florida Class.

290.     The number and identity of the Rule 23 Florida Class members are ascertainable from Defendants' records.

291.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Florida Class member and the benefits conferred by the Rule 23 Florida Class members and realized by Defendants are determinable from Defendants' records.

292.     For the purpose of notice and other purposes related to this action, the Rule 23 Florida Class members' names and contact information are readily available from Defendants.

293.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Florida Class members.

294.     The Rule 23 Florida Class members are so numerous that joinder of all members is impracticable.

295.     The disposition of the Rule 23 Florida Class members' claims as a class will benefit the parties and the Court.

296.     There are more than 50 Rule 23 Florida Class members.

297.     Plaintiff Slade's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Florida Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Florida Class member in separate actions.

298.     Plaintiff Slade and the Rule 23 Florida Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

299.     Plaintiff Slade and the Rule 23 Florida Class members sustained similar losses,

injuries, and damages arising from the same unlawful practices, polices, and procedures.

300.     Plaintiff Slade and the Rule 23 Florida Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures

301.     By seeking to represent the interests of the Rule 23 Florida Class members, Plaintiff Slade is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

302.     Plaintiff Slade is able to fairly and adequately protect the interests of the Rule 23 Florida Class and has no interests antagonistic to the Rule 23 Florida Class.

303.     Plaintiff Slade is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

304.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Florida Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Florida Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating

the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Florida Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Florida Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

305.     Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

306.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

307.     The Rule 23 Florida Wage Subclass and the Rule 23 Florida Unjust Enrichment Subclass are properly treated as subclasses pursuant to Rule 23(c)(5).

308.     Common questions of law and fact exist as to the Rule 23 Florida Class that predominate over any questions only affecting Plaintiff Slade and the Rule 23 Florida Class members individually and include, but are not limited to:

      n.     Whether Plaintiff Slade and the Rule 23 Class members were subject to a common expense reimbursement policy;

      o.     Whether Plaintiff Slade and the Rule 23 Florida Class were subject to a policy

that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

p.    Whether Plaintiff Slade and the Rule 23 Florida Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

q.    Whether Plaintiff Slade and the Rule 23 Florida Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

r.    Whether Defendants collected and maintained records of Plaintiff Slade and the Rule 23 Florida Class members' actual vehicle expenses;

s.    Whether Defendants reimbursed Plaintiff Slade and the Rule 23 Florida Class members for their actual expenses;

t.    Whether Defendants reimbursed Plaintiff Slade and the Rule 23 Florida Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

u.    Whether Defendants reimbursed Plaintiff Slade and the Rule 23 Florida Class members based on a reasonable approximation of the expenses they incurred;

v.    Whether Defendants properly reimbursed Plaintiff Slade and the Rule 23 Florida Class members;

w.    Whether Plaintiff Slade and the Rule 23 Florida Class conferred a benefit on Defendants that Defendants were aware of;

x.    Whether Defendants accepted the benefits conferred on them by Plaintiff Slade and the Rule 23 Florida Class;

y.    Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff Slade and the Rule 23 Florida Class without compensating for it;

z.    The nature and extent of class-wide injury and the measure of damages for those injuries.

In recognition of the services Plaintiff Slade has rendered and will continue to render to the Rule 23 Florida Class, Plaintiff Slade will request payment of a service award upon resolution of this action.

41

**Causes of Action**

**Count 1**

**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

309.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

310.     Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

311.     Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

312.     Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

313.     Defendants' failure to properly reimburse Plaintiffs and the FLSA Collective for vehicle expenses resulted in Plaintiffs and the FLSA Collective being paid less than the minimum wage rate they were due in some or all workweeks.

314.     Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because some or all of Plaintiffs and the FLSA Collective were paid a wage rate lower than Defendants informed them that they would be paid.

315.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

316.     Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

317.     As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law, 820 ILCS 105, *et seq*.**
**(On Behalf of Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class)**

318.     Plaintiffs Nichole Hawn and Teresa Hawn restate and incorporate the foregoing allegations as if fully rewritten herein.

319.     Defendants paid Plaintiffs Nicole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

320.     Defendants ostensibly paid Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class at or close to minimum wage minus a tip credit for the hours they worked.

321.     Because Defendants required Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class minimum wage.

322.     By not paying Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class at least minimum wage for each hour worked, Defendants have violated the IMWL.

323.     As a result of Defendants' violations, Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class are entitled to treble the amount of unpaid minimum wages and unreimbursed expenses, 5% damages, costs, and attorneys' fees and costs, as provided by 820 ILCS 105/12(a).

**Count 3**
**Violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et seq.***
**(On Behalf of Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class)**

324.    Plaintiffs Nichole Hawn and Teresa Hawn restate and incorporate the foregoing allegations as if fully rewritten herein.

325.    The IWPCA requires employers to pay their employees all wages earned by them during the semi-monthly or bi-weekly pay period. 820 ILCS 115/4.

326.    The IWPCA prohibits employers from taking deductions from their employees' wages unless those deductions are required by law, benefit the employee, made with the express written consent of the employee, or meet another exception not relevant here. 820 ILCS 115/9.

327.    The IWPCA requires employers to reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to the services performed by the employer. 820 ILCS 115/9.5.

328.    Defendants provided no mechanism or procedure through which delivery drivers could submit supporting documentation of the expenses they incurred related to using their vehicles on Defendants' business.

329.    Because Defendants under-reimbursed the delivery drivers for their vehicle expenses, Defendants failed to pay Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class all wages earned by them during semi-monthly or bi-weekly pay periods, in violation of the IWPCA.

330.    By requiring the delivery drivers to incur vehicle expenses to advance the business and not adequately reimbursing for those expenses, Defendants have taken unauthorized deductions

44

from the wages of the Illinois Rule 23 Wage Class and have failed to meet the requirements for reimbursing for employee expenses, in violation of the IWPCA.

331.　　Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class were entitled to be reimbursed for all necessary expenditures incurred within the scope of employment and directly related to the services performed for the employer.

332.　　Defendants' practice of failing to pay Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class at the rate agreed to by the parties violated the IWPCA.

333.　　Defendants' practice of failing to reimburse Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class for all necessary expenditures incurred within the scope of employment and directly related to the services performed for the employer violated the IWPCA.

334.　　Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 735 ILCS 5/13-206.

335.　　As a result of Defendants' violations of the IWPCA, Plaintiffs Nichole Hawn and Teresa Hawn and the Illinois Rule 23 Wage Class, are entitled to unpaid wages, damages in the amount of 5% of unpaid wages compounding monthly, reasonable attorneys' fees, and costs. 820 ILCS 115/14.

<u>**Count 4**</u>
**Failure to Pay Minimum Wages – Florida Constitution, Art. X, §24**
**(On Behalf of Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class)**

336.　　Plaintiff Dewitt Slade restates and incorporates the foregoing allegations as if fully rewritten herein.

337.　　Defendants paid Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class below

minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

338.     Defendants ostensibly paid Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class at or close to minimum wage for the hours they worked.

339.     Because Defendants required Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class minimum wage.

340.     By not paying Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class at least minimum wage for each hour worked, Defendants has violated the Florida Constitution, Art. X, Section 24.

341.     As a result of Defendants' violations, Plaintiff Dewitt Slade and the Rule 23 Florida Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in damages under Section 24, costs, and attorneys' fees.

### Count 5
### Unjust Enrichment
### (On Behalf of Plaintiff Nichole and Teresa Hawn and Rule 23 Illinois Unjust Enrichment Class)

342.     The Rule 23 Illinois Unjust Enrichment Class members at the Defendants' Papa John's stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

343.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Illinois Unjust Enrichment Class members.

344.     It would be unjust for Defendants to be permitted to retain the benefit conferred on

them by the Rule 23 Illinois Unjust Enrichment Class members without commensurate compensation.

345.     Plaintiff Nichole and Teresa Hawn and the Rule 23 Illinois Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the five (5) years preceding the filing of this complaint.

## Count 6
### Unjust Enrichment
### (On Behalf of Plaintiff Dewitt Slade and Rule 23 Florida Unjust Enrichment Class)

346.     The Rule 23 Florida Unjust Enrichment Class members at the Defendants' Papa John's stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

347.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Florida Unjust Enrichment Class members.

348.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Florida Unjust Enrichment Class members without commensurate compensation.

349.     Plaintiff Dewitt Slade and the Rule 23 Florida Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the four (4) years preceding the filing of this complaint.

**WHEREFORE, Plaintiffs pray for all of the following relief:**

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising

47

them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Designation of Plaintiffs Nichole and Teresa Hawn as representatives of the Illinois Rule 23 Wage Class and Rule 23 Illinois Unjust Enrichment Class, and counsel of record as Class Counsel for both Classes.

D.      Designation of Plaintiff Slade as representative of the Rule 23 Florida Wage Class and Rule 23 Florida Unjust Enrichment Class, and counsel of record as Class Counsel for both Classes.

E.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

F.      A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA.

G.      An award of unpaid minimum wages, unreimbursed expenses, and unlawful deductions due under the IMWL and IWPCA.

H.      Statutory Damages under the IMWL.

I.      Statutory Damages under the IWPCA.

J.      An award of restitution as a result of unjust enrichment under Illinois law.

K.      An award of prejudgment and post-judgment interest.

L.      A declaratory judgment that the practices complained of herein are unlawful under the Florida Constitution, Art. X, Section 24.

M.      An award of unpaid minimum wages and unreimbursed expenses due under Florida

Constitution, Art. X, Section 24.

N.      An award of damages under Florida Constitution, Art. X, Section 24, based on

Defendants' failure to pay wages, calculated as an additional one time of back wages.

O.      An award of restitution for unjust enrichment under Florida law.

P.      An award of prejudgment and post-judgment interest.

Q.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

R.      Such other legal and equitable relief as the Court deems appropriate.

Dated this 28th Day of July 2022.

Respectfully submitted,

/s/ Samuel Elswick, Jr.
Andrew R. Biller (Bar # 0081452)
Andrew P. Kimble (Bar # 0093172)
Samuel D. Elswick, Jr. (Bar #0100327)
Biller & Kimble, LLC
8044 Montgomery Road
Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*selswick@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

49

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Samuel Elswick, Jr.*
Samuel Elswick, Jr.